IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

KEN LENSING                                                                                          PLAINTIFF

vs.                                            CASE NO. **4:05CV00085GH**

UNITED PARCEL SERVICE, INC.                                                          DEFENDANT

## ORDER

Pending before the Court is defendant's motion to disqualify Harrill and Sutter from representing plaintiff in this action because of the inherent conflict of interest in its representation of plaintiff and Raymond Battle, in his ongoing employment litigation against UPS in *Raymond Battle v. United Parcel Service*, 4:03cv847. Plaintiff objects and has moved to disqualify defendant's counsel.

Plaintiff contends that he was terminated by defendant UPS on the basis of his age, in violation the Age Discrimination in Employment Act ("ADEA"). The law firm of Harrill and Sutter, PLLC, represents plaintiff. Harrill and Sutter also represents Battle in an action he filed against defendant, alleging violation of the Family and Medical Leave Act of 1993 and the Americans with Disabilities Act. The case was assigned to the Honorable Rodney S. Webb, Senior United States District Judge for the District of North Dakota sitting by designation in the Eastern District of Arkansas. The *Battle* case was tried before an eight person jury on October 18, 2004 through October 22, 2004, when the jury returned a verdict against defendant on Battle's failure to provide reasonable accommodation claim, awarding Battle $15,640.00 in lost wages and $50,000.00 in compensatory damages. The jury found in favor of UPS on Battle's disability discrimination claim. UPS appealed the decision on December 3, 2004. Battle filed a notice of appeal on December 13, 2004, appealing

-1-

the Court's granting judgment as a matter of law for UPS on Battle's FMLA claim. The appeals are still pending before the Eighth Circuit Court of Appeals.

Defendant states that Battle is currently a Division Manager for UPS and that he was plaintiff's supervisor during the events leading up to plaintiff's termination. According to defendant, Battle reprimanded plaintiff for unacceptable job performance and approved discipline of plaintiff for acts that contributed to defendant's decision to terminate plaintiff. In order to prepare for the Rule 30(b)(6) deposition, counsel for defendant states that he needs to interview Battle, but has not contacted Battle because of Harrill and Sutter's representation of Battle in Battle's action.

Plaintiff responds that Battle is not an essential witness. He disputes that Battle ever reprimanded him. Plaintiff counters that defense counsel should be disqualified because defense counsel is directly adverse to Battle based on defendant's assertion that Battle can bind the corporation.

The resolution of this issue is not simple. "[D]isqualification of an attorney is an absolutely necessary measure to protect and preserve the integrity of the attorney-client relationship; yet it is a drastic measure to be imposed only where clearly required by the circumstances." *Weigel v. Farmers Ins. Co., Inc.*, 356 Ark. 617, 621 (2004). "The Model Rules of Professional Conduct are applicable in disqualification proceedings." *Id.* at 622.

Attorneys practicing before this Court are subject to the Arkansas Rules of Professional Conduct ("ARPC") adopted by the Arkansas Supreme Court. *See* Local Rule 83.5(e) adopting the Uniform Federal Rules of Disciplinary Enforcement which in Rule IV adopts the Rules of Professional Conduct adopted by the highest court of the state in which the Court sits. In 1985, the Arkansas Supreme Court adopted the Model Rules of Professional Conduct which became effective on January 1, 1986. *See In the Matter of the Arkansas Bar Ass'n: Petition for the Adoption of the Model Rules of Professional Conduct*, 287 Ark. 495 (1985). The Rules were subsequently revised

effective May 1, 2005.  *See* 2005 Arkansas Court Order 04 (C.O. 04)

Rule 1.7 of the ARPC (effective May 1, 2005) provides

a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another clients; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer,
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law:
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

AR ORDER 05-04

The Arkansas Supreme Court has held that Rule 1.7 "is cast in imperative terms." *Berry v. Saline Mem'l Hosp.*, 322 Ark. 182, 189 (1995).

According to defendant, plaintiff was the de facto Center Manager at defendant's Conway, Arkansas facility and that during this time he reported directly to Battle.  Defendant states that Battle reprimanded plaintiff for allowing a driver to continue driving with an expired Department of Transportation certification. Defendant asserts that during 2003, plaintiff continued to perform unacceptably and that as a result of an internal security investigation, defendant placed plaintiff out of service between April 11, 2003 and May 12, 2003.  According to defendant, Battle approved the placement out of service.

Upon his return from placement out of service, plaintiff was transferred to another division to work at defendant's facility in Little Rock, Arkansas.  He worked there until January, 2004, when he was discharged.

Defendant anticipates calling Battle as a witness, and notified plaintiff of this in its Fed. R. Civ. P. 26 Initial Disclosures.  Defendant states that it needs to

interview Battle to respond to written discovery and prepare for the Rule 30(b)(6) deposition, but has been unable to do so because Battle is represented by Harrill and Sutter in the other matter.

Defendant argues that there is an actual conflict of interest pursuant to Rule 1.7(a). The Comments to that Rule provide:

> [1] Loyalty and independent judgment are essential elements in the lawyer's relationship to a client. Concurrent conflicts of interest can arise from the lawyer's responsibilities to another client, a former client or a third person or from the lawyer's own interests.
>
>  . . .
>
> [6] Loyalty to a current client prohibits undertaking representation directly adverse to that client without that client's informed consent. Thus, absent consent, a lawyer may not act as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated. The client as to whom the representation is directly adverse is likely to feel betrayed, and the resulting damage to the client-lawyer relationship is likely to impair the lawyer's ability to represent the client effectively. In addition, the client on whose behalf the adverse representation is undertaken reasonably may fear that the lawyer will pursue that client's case less effectively out of deference to the other client, i.e., that the representation may be materially limited by the lawyer's interest in retaining the current client. Similarly, a directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit.
>
> . . .
>
> [8] Even where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests. . . . The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.
>
> . . .
>
> [37] As an integral part of the lawyer's duty to prevent conflict of interests, the lawyer must strive to avoid not only professional impropriety, but also the appearance of impropriety. The duty to avoid the appearance of impropriety is not a mere phrase. It is part of the foundation upon which are built the rules that guide lawyers in their moral and ethical conduct. This obligation should be considered in any instance where a violation of the Rules of Professional Conduct are at

issue. The principle pervades these Rules and embodies their spirit.

*ARPC 1.7, cmts 1, 6, 8, 37.*

Defendant argues that Harrill and Sutter's representations of plaintiff and Battle are directly adverse, and that there is a significant risk that the representation will materially limit Harrill and Sutter's responsibilities to these clients. Both clients are involved in ongoing litigation; it is difficult to avoid having a conflict arise in this situation.

In a 1992 Ethics Opinion by the American Bar Association Committee on Ethics and Responsibility, the Committee concluded "that a lawyer's examining the lawyer's client as an adverse witness, or conducting third party discovery of a client, will ordinarily present a conflict of interest that is disqualifying absent consent of one or both of the clients involved. . ."

> The Committee believes that as a general matter examining one's own client as an adverse witness on behalf of another client, or conducting third party discovery of one client on behalf of another client, is likely (1) to pit the duty of loyalty to each client against the duty of loyalty to the other; (2) to risk breaching the duty of confidentiality to the client-witness; and (3) to present a tension between the lawyer's own pecuniary interest in continued employment by the client-witness and the lawyer's ability to effectively represent the litigation client. The first two of these hazards are likely to present a direct adverseness of interest falling within Rule 1.7(a); all three may constitute material limitations on the lawyer's representation, so as to come under Rule 1.7(b).

*ABA Comm. on Ethics and Prof'l Responsibility,* Formal Op. 92-367 (1992)

The Committee, however, did not state that disqualification was required under all circumstances, and the degree of adverseness of interest involved depends on the particular circumstances. In its Opinion, the ABA Committee recognized the problems and prejudice created by requiring withdrawal. It suggested as a possible solution that another attorney be retained solely for the purposes of examining the lawyer's client. *Id.*

Credibility of witnesses will be a major factor in this case, as it is in many employment discrimination cases. Indeed, there is already a dispute concerning

whether Battle reprimanded plaintiff. The Court has reviewed the record in *Battle* and notes that it involves assertions that Battle suffered a "nervous breakdown" in 2003 and that UPS failed to accommodate him. Battle admitted that he was restricted in his ability to think and concentrate.

In attempting to advocate plaintiff's position, Harrill and Sutter may have to attack Battle's decision to discipline plaintiff. Such an attack would run counter to the position Harrill and Sutter have taken with regard to Battle's case, that he was able to perform his job competently..

The Court is of the opinion that by representing Battle, Harrill and Sutter's representation of plaintiff may be materially limited. Plaintiff's counsel may be unwilling to explore areas in cross examination which would be adverse to Battle but helpful to plaintiff's action.

The Court, however, is not of the opinion that disqualification is warranted in this instance. Both Battle and plaintiff have consulted with separate counsel and have signed affidavits waiving the conflict of interest. Battle will be one of several defense witnesses. Battle did not terminate plaintiff and was not plaintiff's supervisor at the time of the termination.

The Court is concerned that plaintiff be allowed to litigate his case with counsel of his choice. Moreover, the Court is cognizant that opposing counsel's objections to representation should be viewed with caution, "for it can be misused as a technique of harassment." *ARPC. 1.7, cmt.* 36 "The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons." *ARPC, Scope*

The Court, however, will require that any cross-examination of Battle be by counsel who is not associated with Harrill and Sutter.

Defendant states that it is in an impossible situation created by Harrill and Sutter's conflicting representations of Battle and plaintiff.  In order to balance the equities, the Court directs that defendant be given access to Battle for the purpose of discussing and obtaining information he has relevant to the facts in this case without having to go through Battle's counsel.

Plaintiff has filed a motion to disqualify defense counsel.  The motion is without merit.  The counsel he seeks to disqualify, Marcus Crider, is not involved in this action  In addition, the Court is not persuaded that a conflict of interest exists in defense counsel representing defendant in this action and in the Battle litigation.

Plaintiff has moved to continue the trial, arguing that no depositions have been taken as a result of the pending motions to disqualify.  The original scheduling order was issued by Chief Judge Holmes, prior to the case being assigned to the undersigned.  The Court will issue a new scheduling order with a new trial date.

Accordingly, the motions to disqualify are denied.  Because the Court has resolved the conflict of interest issue, the motion for protective order is denied as moot.  The motion to continue the trial is granted.

IT IS SO ORDERED this 3rd day of October,  2005.

*George Howard, Jr*
UNITED STATES DISTRICT JUDGE